## Henry W. Leman, Appellee, v. Percival Steele, Appellant.

## Gen. No. 16,063.

1. BANKRUPTCY—*who should not represent receiver as counsel.* An attorney for creditors petitioning that a corporation be declared bankrupt should not act as attorney for a receiver appointed upon the filing of such petition.

2. RECEIVERSHIPS—*when services of attorney not rendered to individuals.* *Held,* under the evidence, that the legal services sought in this case to be made the basis of a set-off, were rendered to the receiver as such and not to the receiver in his individual capacity.

Assumpsit. Appeal from the Superior Court of Cook county; the HON. GEORGE W. PATTON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 6, 1912. *Certiorari* denied by Supreme Court (making opinion final).

CHARLES LANE, for appellant.

FRANK H. CULVER, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

In January, 1901, appellant, Percival Steele, as attorney for certain creditors, filed a petition in the United States District Court in Chicago to have the Union Feather and Wool Mfg. Co. declared a bankrupt, and upon his motion, appellee, Henry W. Leman, was appointed receiver for the Company. The Federal Court, however, required the petitioning creditors to file a bond to protect the Company. To secure such a bond, appellant, by undertaking to hold him harmless, induced appellee to indemnify a bond company which gave the required bond. After a hearing, the Federal Court dismissed the petition to have the corporation adjudged a bankrupt, which action was affirmed by the United States Circuit Court of Appeals, to which the petitioning creditors had appealed. Subsequently, the bond company was compelled to pay, and it in turn compelled appellee (Leman), to protect it upon the indemnifying bond which he had given it, whereupon, after demand, appellee, Leman, brought this suit to recover from appellant upon his undertaking to protect Leman.

Appellant filed various pleas, but relied for his defense essentially upon a plea of set-off. Upon a trial, the court refused to admit the proof offered by appellant under his plea of set-off, and instructed the jury to return a verdict in favor of Leman for $2,398, upon which judgment was entered, and Steele appealed to this court.

The controlling question in this case is whether or not the services set out in the copy of account or bill of particulars attached to the plea of set-off filed by Steele, and in support of which he offered testimony, are properly chargeable against Leman individually, for, if not, the judgment in his favor was proper.

After a careful consideration of the record in the case, and of the briefs and arguments of counsel, we

think the court below properly held that the alleged set-off could not be allowed. It appears that some of the services charged for were rendered before the receiver was appointed. Throughout the bankruptcy litigation, Steele represented the petitioning creditors, and, on their behalf, procured the appointment of Leman as receiver, and made all the necessary and somewhat unusual arrangements for the bond which the court required them to give, and out of the giving of which this suit arose, and this part suggests, at least, that the services here sought to be recovered for were rendered for and were properly chargeable to the petitioning creditors. And this suggestion is strengthened by an inspection of the items charged for, many of which were not and could not have been for the benefit of Leman, as receiver. For example, Steele makes a charge under date of January 28, 1901, for preparing and having entered an order for the appointment of a receiver. As the receiver had not been appointed, this service was clearly not chargeable to him but to the petitioning creditors.

"Jan. 31, attendance before Justice of the Peace Hamburger in reference to two suits against the Union Feather & Wool Mfg. Co. and presenting to Justice the matter of the petition filed in U. S. District Court, etc., and having execution stayed in both cases." "Feb. 1st, dictating petition and order to restrain attachment suit of A. Goldberg before Justice Hamburger." "Feb. 5th, attendance before Judge Kohlsaat having restraining order entered in Goldberg case, obtaining certified copy thereof, having same served, etc. Attendance before Justice Hamburger, etc. Serving restraining order upon various parties having attachment suits, etc." . Feb. 6th, attendance before Judge Kohlsaat upon motion of alleged bankrupt for rule to file bond, having amount fixed at $2,000, and time to file same fixed at five days. * * * "Oct. 30, attendance in U. S. Court of Appeals and argument, all day."

Just how these items could be proper charges

against the receiver, who was but an officer of the court, does not appear.

It is true that when Leman had been appointed receiver and had been by order of court authorized "to employ counsel to advise and represent him as receiver," he did file a written acceptance of the appointment as receiver, in which he designated Steele "as his attorney, upon whom service of notice" could be made. It appears, however, that Steele prepared and procured the entry of the order, which was entered upon his motion, authorizing Leman "to employ counsel to advise and represent him as receiver" and yet Steele seeks, in this case, to charge this service to Leman, personally.

The position of appellant, Steele (he being the attorney for petitioning creditors in bankruptcy), acting as attorney for the trustee, was one which the policy of the law condemns: "The attorney for the petitioning creditors should not be allowed to be the attorney for the receiver or trustee in bankruptcy. While such representation is not prohibited, it affords an opportunity for chicanery, fraud and perjury." In re Strobel, 20 Am. Bank Rep., 22.

"The trustee should not be allowed to retain the counsel for the bankrupt." In re Rusch, 5 Am. Bank Rep. 565.

Our own Supreme Court refused to allow the solicitor of the receiver to be paid for services rendered to him where it appeared that he had also been the solicitor for the complainant, and said: "Attorneys cannot accept employment from adverse litigants in the same controversy. Nor does it matter that their intentions and motives are honest. The rule is a rigid one, designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties or be led to attempt to reconcile con-

flicting interests, rather than to enforce to their full extent the rights which he alone represents." Strong v. International Assn., 183 Ill. 97.

In this case, Steele, having drawn and had entered the order authorizing his employment, was fully apprised of the fact that the service he was to render Leman in the bankruptcy matter, was to him "as receiver;" and in that capacity only (if at all) was Leman liable for the services, and, even then, for such amount as should be determined by the court in which he was appointed.

"In his relations to the court appointing him, and the consequent restriction upon his powers, the receiver occupies a somewhat different position from that of an administrator or executor.    Strictly, a receiver had no right to incur any liability without the consent of the court. * * * In this case no question is made as to the employment of the attorney by the receiver; the court has approved of the propriety and necessity of such action.    When counsel is employed with the approval of the court, all the authorities agree that the court will pass upon the amount to be allowed for services.    We are satisfied that this rule as to compensation prevails both in the English and American courts and that it is the universal practice of courts of equity to compel claimants upon the fund to present their claims to the court and that, where so presented and passed upon, such claims are *res judicata* so far as the receiver is concerned and that his personal liability ceases. * * * We cannot conceive that any attorney, whose every act must be with full knowledge that he is acting for an officer of the court, will complain that, in accepting employment from a receiver, he is held to do so with the understanding that his compensation will depend upon the amount which may be allowed him therefor by the court upon the final accounting of the receiver.    Any other rule would subject the receiver to expensive litigation af-

ter his final accounting and discharge from his trust."
Walsh v. Raymond, 58 Conn. 251.

"Any acts of the receiver not within the authority
conferred by the order of court and not otherwise au-
thorized by the court, do not bind the court.    The
corollary of this proposition is that, if the receiver
act without authority or exceeds his authority he be-
comes personally liable and must answer individually.
This produces the correlative that, where the receiver
acts within the scope of his authority as given by the
court, he incurs no personal liability. * * * Under
no circumstances does a receiver incur any personal
responsibility where he acts in conformity with the
orders of the court."    Alderson on Receivers, pp.
329-330.

We are convinced that the attempted offset consti-
tuted no valid defense to the claim sued on, and the
judgment of the court below will be affirmed.

*Judgment affirmed.*