**In re Estate of Frank F. Kapraun, Deceased.**

**Gen. No. 11,221.**

Second District, Second Division.

April 9, 1959.

Released for publication May 7, 1959.

232

Walter C. Overbeck, of Henry, for appellants.

Robert T. Swengel, of Henry, for executor-appellee.

JUSTICE CROW delivered the opinion of the court.

This is an appeal by Karl A. Kapraun, Bertha P. Kapraun and Anna C. Kapraun from an order of the Circuit Court of Marshall County overruling certain objections to the Final Report of Philip H. Kapraun, Executor of the Will of Frank F. Kapraun, deceased. The matter was heard in the Circuit Court on an appeal and trial de novo from the County Court, where the same type of order had previously been entered.

Frank F. Kapraun died testate on April 1, 1953. Karl A., Edward W., Philip H., Bertha P., and Anna C.

Kapraun, his children, all adults, were his only heirs, legatees, and devisees. His Will was admitted to probate on May 4, 1953, and a son, Philip, nominated therein, was appointed and qualified as Executor in the County Court. Attorney Robert T. Swengel acted as attorney for the executor. The deceased owned certain personal property,—cash, a bank deposit, old coins, a safe, and U. S. Bonds,—of the approximate value of $12,000, but owned no real estate. Under the Will, so far as material, the testator gave, devised, and bequeathed "all the rest, residue and remainder of my estate . . . to my executor with the power and directions to convert all of my estate into money as soon as the same can be done without injury to the value thereof. . . ." and "after my estate has been converted into money, and the cost of so converting the same has been paid, I give and bequeath all of said estate remaining to be equally divided between my five children: . . ." (naming them.)

On April 12, 1954, three of the five children,—Karl A., Bertha P. and Anna C. Kapraun,—filed a complaint in the Circuit Court of Marshall County, seeking to establish a constructive trust, and for other relief, in eighty acres of land which the testator had previously owned in his lifetime, but which he had conveyed on June 7, 1949, to his son Philip H. Kapraun and Agnes C. Kapraun, wife of Philip H. Kapraun, pursuant to a contract of January 2, 1949, the complaint, in substance, alleging, inter alia, that at the time of the contract and deed a confidential, fiduciary relationship existed between Philip H. Kapraun and his wife, and the father, Frank F. Kapraun, and that the purchase price of $250 per acre was substantially under the true market value. Philip H. Kapraun, individually, and his wife, Agnes C., and the other child of the testator, Edward W. Kapraun, and a tenant were the original defendants. Later, on the motion of the plain-

tiffs, Philip H. Kapraun, as Executor of the Will of Frank F. Kapraun, deceased, was made a defendant. That cause was referred to a Master in Chancery, who, after a hearing, recommended a dismissal of the suit for want of equity, and the Circuit Court entered a decree dismissing the suit for want of equity. An appeal was then taken by the plaintiffs therein to the Supreme Court, an opinion was filed on November 20, 1957, affirming the decree of the Circuit Court: Kapraun v. Kapraun (1957) 12 Ill.2d 348, and the mandate therein was filed in the Circuit Court December 10, 1957.

On May 4, 1953, the Executor, Philip H. Kapraun, had filed an inventory, which listed no real estate, but listed some cash, a bank deposit, and certain U. S. Savings Bonds, totalling about $12,000. Following the opinion of November 20, 1957 of the Supreme Court in Kapraun v. Kapraun the Executor on January 6, 1958 sent in the U. S. Savings Bonds for redemption, received a check therefor February 5th, prepared a first and final account, sent copies to the other legatees February 28th, and filed the first and final account in the County Court on March 10, 1958, wherein the Executor indicated a proposed, though not yet paid, attorney's fee of $500 to Mr. Swengel, as attorney for the Executor.

Four of the testator's five children, being all of the children except the Executor, filed written objections April 7, 1958 to this final report of the Executor, though Edward W. Kapraun did not join in the appeal from the County Court to the Circuit Court or to this Court. The objections, so far as material, are, substantially, as follows: (1) that the Executor not having filed a first and final report until March 10, 1958, more than two years from his appointment of May 4, 1953, unless good cause is shown, the Executor is liable to pay interest on the not paid out and not distributed

235

personal estate, which property amounts to $11,995.29, at the rate of ten per cent per annum from May 4, 1955, under Ch. 3 Ill. Rev. Stats., 1957, par. 462; and (2) that Robert T. Swengel, attorney for the Executor, Philip H. Kapraun, represented the Executor in the administration of the estate, and also represented Philip H. Kapraun, individually, and as Executor, defendants in the foregoing chancery proceeding, Kapraun v. Kapraun brought by Karl A., Bertha P., and Anna C. Kapraun, seeking to establish the foregoing alleged constructive trust, and by so doing the attorney represented conflicting interests in violation of certain Canons of Professional Ethics of the Illinois State and American Bar Associations, that he was paid or expected to be paid by Philip H. Kapraun, individually, for services in the chancery proceeding, and by reason of the premises he should forfeit his claim for an allowance of $500 for fees for representing the Executor in the estate proceeding. The County Court overruled the objections, approved the account, ordered payment of costs and fees, and directed distribution. The Circuit Court order is to the same effect. In the Circuit Court there was a stipulation that Mr. Swengel was the attorney for the Executor in the estate proceedings and for Philip individually and as Executor in Kapraun v. Kapraun, that for services in Kapraun v. Kapraun he had been partly paid and expects to be fully paid by Philip individually, and copies of various parts of the files and records in Kapraun v. Kapraun were admitted in evidence as exhibits, being chiefly some of the pleadings and orders therein. The record also includes copies of the petition for probate, etc., letters, inventory, final report, objections, and orders herein of the County and Circuit Courts.

The appellants objectors, as to the one objection, cite, primarily, Section 308 of the Probate Act, Ch. 3,

Ill. Rev. Stats., 1957, par. 462, which is as follows, so far as now material:

"At the expiration of a period of two years after the issuance of letters testamentary or of administration the executor or administrator shall be charged with interest at the rate of ten per cent per annum on the fair market value of all the personal estate which has come into his possession or control and has not been properly paid out or distributed except for good cause shown. The interest shall run from the period two years after the issuance of letters testamentary . . . ."

On the other objection, the appellants cite primarily Canon 6 of the Canons of Professional Ethics of the Illinois State Bar Association, revised and adopted June 4, 1938, and of the American Bar Association, adopted August 27, 1908, edition of December, 1950, which provides, so far as material:

". . . It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose. . . ."

The facts do not appear to be in dispute. Robert T. Swengel, an attorney, represented Philip H. Kapraun, as Executor in the estate proceedings, and represented him both individually and as Executor in the cause in the Circuit Court of Kapraun v. Kapraun. At the time of filing the complaint therein Philip H. Kapraun as Executor was not made a party defendant, but later, on motion of the plaintiffs, Philip H. Kapraun as Executor was made a party defendant. He, as Executor, then filed a separate answer in effect denying that the plaintiffs were entitled to any relief. Philip H.

237

Kapraun, individually, (and his wife, Agnes) had also filed an answer in effect denying that the plaintiffs were entitled to any relief. Mr. Swengel has been partially paid and expects to be fully paid by Philip H. Kapraun, individually, for services rendered in Kapraun v. Kapraun and the requested attorney's fee of $500 indicated in the Executor's presently pending final account is evidently solely for legal services to the Executor in the estate proceedings as such.

It is the theory of the Executor that the Circuit Court was correct in overruling the objections for the following reasons:

"1. There was no conflict of interest when the attorney for the executor in the estate proceedings also represented Philip H. Kapraun, both individually and as executor, in a certain cause in the Circuit Court of Marshall County, as well as in the appeal therefrom to the Supreme Court of the State of Illinois, so that the attorney for the executor is entitled to attorney fees for services rendered in connection with the administration of the estate.

"2. Since the appellants did not make objection in the equity proceedings when the executor continued to act, the doctrine of res judicata prevents them from raising the objection for the first time on their objections to the final account and report of the executor.

"3. Good cause was shown why distribution was not made within the two year period after issuance of letters testamentary so the executor should not be personally charged with interest at ten per cent per annum."

As we view the record, the Executor, Philip H. Kapraun, had no actual interest or duty in the suit seeking to establish the alleged constructive trust. Kapraun v. Kapraun, which necessarily required him as Executor to either support or defend that action. The relief prayed by the plaintiffs was, primarily, that

238

Philip H. Kapraun and Agnes C. Kapraun be decreed to hold title to the land as constructive trustees for the plaintiffs Anna C. Kapraun, Bertha P. Kapraun, Karl A. Kapraun, and the defendants Philip H. Kapraun and Edward W. Kapraun. The parcel of real estate in question had been conveyed by the testator some four years prior to the testator's death. Therefore, this real estate at the time of his death was ostensibly no part of his estate that could be or should be inventoried or with which the Executor was concerned. Under the testator's Will it is only "the rest, residue and remainder *of my estate*" which is devised and bequeathed to the Executor, with power and directions only "to convert all *of my estate*," and then "after *my estate*" has been so converted the testator gives and bequeaths "all of *said estate*" equally to the five children. Unless the real estate was a part of the decedent's estate the Executor under this Will did not take it, had no power or directions as to it, and the five children had no interest under the Will in the proceeds of any converting thereof. Although it is somewhat fruitless to speculate what might have occurred had Kapraun v. Kapraun been decided the other way, apparently under, at least, the plaintiffs' prayer for relief the real estate there concerned never would have been a part of the decedent's *"estate,"* as such, even if the plaintiffs had succeeded,—it would have been held by the grantees in the testator's deed as constructive trustees for all the children. Under another possible view, however, had the plaintiff there succeeded the real estate might conceivably have been determined to have been still owned by the decedent at his decease and hence to be a part of his "estate," as such, but that could have resulted only, of course, if the plaintiffs had succeeded in that suit and it had been decided differently than it was. Whichever of those possibilities might have occurred, there was, in any event, no absolute duty on the Executor, as such,

239

to join as a party plaintiff or defendant in the active prosecution of the suit and involve the estate in the perhaps substantial costs, expenses, and fees of protracted litigation simply on the hope that under one possible view maybe the real estate might, if the suit were successful, be considered a part of the "estate" as such and hence an additional item with which the Executor under this Will would have been concerned.

Although the Executor as such was made a party defendant to the chancery suit, and may have been a proper party defendant, he being perhaps contingently interested in the eventual outcome thereof, we do not think he was a necessary party within the meaning that he had an absolute interest or duty actively to support or defend that suit. The plaintiffs and the Executor in this instance could not create an actual adverse, conflicting interest in the Executor just by making him a defendant or just by his filing an answer where no actual adverse, conflicting interest on his part as Executor existed. In the absence of some proper order of the County Court in the administration proceedings authorizing or directing the Executor to join in and take an active part in the prosecution of that suit, and to incur and charge to the estate the Executor's part of the costs, expenses, and fees involved,—and none of the parties seem to have ever brought that matter to the attention of the County Court, and, so far as we are aware, any of them could have done so,—about all the Executor apparently could do, under the circumstances, was remain passively interested and observant. Absent such an order, the personal representative of the estate might well have been subject to possibly justifiable criticism had he actively joined in the prosecution of that suit and involved the estate in such expense of such protracted litigation on such contingency. Hindsight, of course, usually is better than foresight, but the outcome of Kapraun v. Kapraun being what it was

240

and the circumstances being what they were, the effort by the plaintiffs therein to recover the real estate there concerned either for all the children as such or the decedent's estate as such was, to say the least, involved in much uncertainty and many contingencies.

Mr. Swengel, therefore, was not, in fact, at the time of the maintenance of that suit representing actual, conflicting, adverse interests. In behalf of his client Philip H. Kapraun, individually, it was his duty to contend for the validity of the testator's deed and the propriety of the transfer. But in behalf of his client Philip H. Kapraun, as Executor, it was, under the circumstances, not necessarily his duty to oppose that position. It was not necessarily the Executor's duty so to oppose that position and could not have necessarily been the Executor's attorney's duty so to oppose. Under the circumstances here, his employment therein by the Executor, such as it was, cannot be considered as actually adverse to his employment therein by the individual.

We are, of course, thoroughly in accord with Canon 6 of the Canons of Professional Ethics of the Illinois State Bar Association and the American Bar Association and the declaration of the Supreme Court, for example, in People v. Gerold (1914) 265 Ill. 448, where the Court stated, in part, p. 477–479:

". . . The rule has long been firmly established that an attorney cannot respresent conflicting interests or undertake to discharge inconsistent duties. . . . He should undertake no adverse employment, no matter how honest may be his motive and intentions. . . . The administration of the law should be free from all temptation and suspicion, so far as human agencies are capable of accomplishing that object, and public policy strongly demands that one who has been employed on one side should not be permitted to appear on the other side. . . ."

■ But, the rule, principle, and canon have no application where the interests represented by an attorney or his duties to different individuals are not conflicting: 4 Ill. L. and P. p. 46, or where the interests of the two parties are only nominally conflicting and no actual, real, conflicting, inconsistent duties are imposed on the attorney: West v. Mohr (1915) 194 Ill. App. 496.

Further, all parties here concerned were fully aware of Mr. Swengel's representation, as an attorney, of the Executor in the estate proceedings and of the same person as an individual and as Executor in Kapraun v. Kapraun. There was no concealment of the capacities in which he appeared. The estate proceedings began May 4, 1953. Kapraun v. Kapraun began April 12, 1954 and did not end until December 10, 1957. Not until the present objections of April 7, 1958 did the objectors, who included all the plaintiffs in Kapraun v. Kapraun represented from the beginning by separate, able counsel, call to the attention of the County Court or Circuit Court, or apparently the Executor or his attorney, the objectors' views and position concerning the attorney's representation of the same person as an individual and as Executor. And the objectors do not, even now, urge that the capacities in which the attorney appeared were detrimental to the estate or that some other type of representation would have been more beneficial to the estate. Under the circumstances, even if the attorney could be said to have represented theoretically conflicting interests that was apparently by consent of all concerned with full knowledge of the facts and, hence, was within the exception stated in the canon, rule, and principle.

■ Having found that Mr. Swengel did not represent actual adverse, conflicting interests in the chancery suit, or if the interests were theoretically con-

242

flicting his representation thereof was by consent of all concerned, and since the appellants have not questioned the reasonableness of, or propriety otherwise of, the proposed fee of the attorney for the Executor, Mr. Swengel may recover the $500 fee for services rendered the Executor in connection with the administration of the estate and such is a proper credit or disbursement for the Executor in the final report. The attorney for an Executor is required to be allowed reasonable compensation for his services: Ch. 3, Ill. Rev. Stats., 1957, par. 491.

Strong v. International Bldg., Loan and Investment Union (1899) 183 Ill. 97, Leman v. Steele (1912) 167 Ill. App. 190, and Miller v. Lloyd (1913) 181 Ill. App. 230, referred to by the appellants, involved various applications of this canon of ethics to varying factual situations, but in none of those cases were the facts and situations concerned the same or similar to those presented here.

■ There existed, of course, as a matter of law, a normal fiduciary relationship between the Executor, Philip H. Kapraun, and the other beneficiaries, but only so far as the administration of the estate was concerned: Stoke v. Wheeler (1945) 391 Ill. 429,—the fiduciary relationship does not necessarily extend to all their transactions and affairs,—whether such exists as to other transactions and affairs, apart from the relationship arising out of the administration, depends on the facts,—but we do not perceive how, under the circumstances, the Executor has been faithless to the fiduciary relationship so far as the administration of the estate is concerned. Roberts v. Weimer (1907) 227 Ill. 138, Christensen v. Christensen (1927) 327 Ill. 448, and Miles v. Wheeler (1867) 43 Ill. 123, cited by the. appellants, all generally involved, among other things, the fiduciary relationship between a personal representative of an estate and the other parties interested

243

therein, but they were not concerned with the problem here presented and do not bear on the present case.

■ With respect to the second objection raised by the appellants, that no good cause is shown why the Executor did not pay out or distribute the personal estate in his possession, about $11,995.29, by or at the expiration of two years, May 4, 1955, from the date of his appointment, and hence is liable for interest thereon at 10% per annum from May 4, 1955, under Ch. 3, Ill. Rev. Stats., 1957, par. 462, it must again be noted that he was appointed May 4, 1953, and his first and final report was filed March 10, 1958, not too long following the affirmance by the Supreme Court of Kapraun v. Kapraun on November 20, 1957 and the filing of the mandate in the Circuit Court December 10, 1957.

■ The Executor in his final report did not attempt to make any specific showing, as such, as to why he had not sooner distributed the personal estate,— otherwise than such cause as might appear in the record. There was no burden on the Executor, though, to anticipate, in the final report, the objection the objectors made, or to attempt to state therein, in advance, in defense, what the Executor considered "good cause" for not theretofore distributing personal estate. The statute does not prescribe any particular manner in which the alleged "good cause" may be shown, or any special pleading or procedure by which the Executor may seek to make such appear. As long as "good cause," if any, is shown, by the record that would seem to comply with the statute.

The objectors in their verified objections to the final report set forth the following:

"That on, to-wit, May 25, 1954, there was filed by the objectors herein, except Edward W. Kapraun who entered his appearance as a defendant in the Circuit Court of Marshall County, Illinois, a complaint as-

244

signed #2997, to establish a constructive trust to the following described parcel of real estate, to-wit:

"The East Half of the Southeast Quarter of Section 4, Township 13, North, Range 9 East of the Fourth Principal Meridian, Marshall County, Illinois, arising out of a deed of Frank F. Kapraun, a widower, to Philip H. Kapraun and Agnes C. Kapraun, dated June 7, 1949, filed April 12, 1954 and recorded in Book V, page 515, in the Recorder's Office of Marshall County, Illinois, charging that prior to and at the time of execution and delivery of said deed, there existed between said Frank F. Kapraun and his son and daughter-in-law, respectively, Philip H. Kapraun and Agnes C. Kapraun, a confidential relation and that the purchase of said parcel of real estate was made at a price not commensurate with its then market value; that Robert T. Swengel represented said Philip H. Kapraun as executor of said estate in this Court and also represented Philip H. Kapraun as executor aforesaid and individually in said equity proceeding in the Circuit Court of Marshall County, Illinois; that had said cause terminated favorably to the plaintiffs who are the objectors herein, the assets of said estate would have been enhanced in a sum of to-wit: $20,000.00; that said Robert T. Swengel having represented said executor in the administration of said estate, and also represented said Philip H. Kapraun, individually, and as executor of said estate in said equity proceeding, for which said Robert T. Swengel has been paid in whole or in part, or expects to be paid for said services, represented conflicting interests which was and is a violation of Canon 6 of the Canons of Legal Ethics of the Illinois Bar Association, is contrary to law and results in the forfeiture of any and all fees he claims due him herein, and to which fees of $500.00, and every part thereof, these objectors object for reasons assigned."

By reason of this specific objection, disregarding the conclusions thereof, and by reason of the other matters appearing in the record, the Circuit Court in considering this objection had all the necessary ultimate facts before it in the record pertinent to the issue.

■ ■ This statute was intended as a penalty, and to make it unprofitable for executors and administrators to hold the funds of an estate in their hands, and to use them in their own business for their own benefit instead of distributing such funds to those entitled thereto: Fraser v. Fraser (1909) 149 Ill. App. 186. Being penal in nature it should be strictly construed to prevent the imposition of the penalty: Van Brunt v. Osterlund (1953) 351 Ill. App. 556.

It is perhaps not necessary to try to make any definitive interpretation or construction of some of the applicable language of this Will, but, insofar as it bears on the immediate problem, under the provision, ". . . after my estate has been converted into money, and the cost of so converting the same has been paid, I give and bequeath all of said estate remaining to be equally divided between my five children: . . ." (naming them),—the children took bequests of money, the net proceeds of the converting of the estate, they were not entitled to distribution (i. e. possession) thereof until the estate had been so converted into money, there is at least a fair question whether they were entitled to any partial, interim distribution as various parts, but not all, of the estate might be converted into money at different times, or whether they were not entitled to any distribution until all the estate had been so converted. Until Kapraun v. Kapraun was finally determined adversely to the plaintiffs there was at least a fair question whether, if the plaintiffs had succeeded, the real estate there involved was a part of the decedent's estate devised to the executor, subject to the power and direction to convert into money, and the net

246

proceeds thereof to be included with the rest of the proceeds of the balance of the estate in the bequests to the children. Those considerations doubtless bore on the Executor's not previously taking steps to make distribution,—particularly so when none of the other interested parties were apparently asking at the time for any prior distribution.

The County Court where the administration on this estate was and is pending had ample jurisdiction and authority under the Probate Act to enforce the settlement of this estate and order distribution, under proper circumstances, if that was indicated by the premises, including the making of a partial, interim distribution prior to final settlement and distribution, if such appeared necessary and proper: Ch. 3, Ill. Rev. Stats., 1957, par. 443 ff. Until the Executor's present first and final account of March 10, 1958 none of the interested parties, including the present appellants objectors, took any steps at all in the County Court to call the matter to the Court's attention and ask for a settlement and distribution, either final or interim.

The deferment of distribution here was apparently not arbitrary, or without cause, or reason, was apparently in good faith, there is nothing to indicate the Executor used any of the funds for his own benefit, it was evidently acquiesced in by the appellants objectors, with full knowledge of the facts, who had ample possible remedies available to them had they wished to assert them, litigation was pending which, until determined otherwise, might have materially affected the subject of distribution, and there was an at least fair question whether the five children as ultimate distributees were entitled to insist upon distribution any sooner.

In view of all the facts and circumstances, and construing the statute as its nature requires, we believe it cannot be said the personal estate in the Executor's

possession March 10, 1958 has not been properly paid out or distributed, and we believe that good cause has been shown in the record why the same was not previously distributed: Van Brunt v. Osterlund (1953) 351 Ill. App. 556; Pillsbury v. Early (1929) 252 Ill. App. 620; Fraser v. Fraser (1909) 149 Ill. App. 186.

The facts in In re Estate of James R. Baker (1942) 315 Ill. App. 366, referred to by the appellants, are so different from the present case that it is not helpful. McDonald v. People (1906) 222 Ill. 325, also suggested by the appellants, was a suit on an administrator's bond against the administrator and his sureties, where there had previously been an order of the probate court on the administrator's account charging him with interest, which order had not been appealed or set aside, and which was, of course, binding in the suit on the bond,— no such question is here concerned. In re Estate of Schofield (1881) 99 Ill. 513 involved, generally, a similar predecessor statute, but dissimilar facts, and does not militate against our views.

The order of the Circuit Court will, therefore, be affirmed.

Affirmed.

WRIGHT, P. J. and SOLFISBURG, J., concur.