2022 IL App (1st) 210741

Third Division
March 30, 2022

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| CHICAGO TRUST COMPANY, as Trustee of the Brierton Family Trust, | ) ) ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBIN ANN BRIERTON, PATRICK LUKE BRIERTON, MARK JOSEPH BRIERTON, CYNTHIA BRIERTON DeLONG, JOHN THOMAS BRIERTON, and THOMAS DAVID BRIERTON, as Beneficiaries of the Brierton Family Trust, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County.<br><br>No. 18 CH 07512 |
| | ) | The Honorable |
| Defendants | ) | Raymond W. Mitchell, |
| | ) | Judge Presiding. |
| (John Thomas Brierton and Thomas David Brierton, as Beneficiaries of the Brierton Family Trust, Defendants and Counterplaintiffs-Appellants; | ) ) ) | |
| | ) | |
| Patrick Luke Brierton, Mark Joseph Brierton, and Cynthia Brierton DeLong, as Beneficiaries of the Brierton Family Trust, Defendants-Appellees). | ) ) ) ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Ellis and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal represents the second time the instant dispute has been before this court.

In 2018, plaintiff Chicago Trust Company, the trustee of the Brierton Family Trust, filed a

complaint for declaratory judgment, seeking a declaration of the terms of the trust in order to distribute the trust's assets. Defendants John Thomas Brierton and Thomas David Brierton, two of the beneficiaries under the trust, filed an answer and countercomplaint, alleging that plaintiff's interpretation of the trust was incorrect, given the existence of an operating agreement governing a limited liability company, where the proceeds of the sale of a manufactured home community owned by the company served as the trust's sole asset. The trial court granted judgment on plaintiff's complaint, finding that plaintiff's interpretation of the trust documents was correct. Defendants appealed, and we affirmed in a Rule 23(b) order. *Chicago Trust Co. v. Brierton*, 2020 IL App (1st) 191769-U; see Ill. S. Ct. R. 23(b) (eff. Apr. 1, 2018).

¶ 2 After this court's decision, in 2020, plaintiff filed a "Petition for Further Declaratory Relief" in the trial court, alleging that the other trust beneficiaries—defendants' siblings—sought enforcement of an *in terrorem* clause contained in the trust agreement. The petition alleged that, under the clause, defendants were entitled to only $1 each from the trust estate because they had contested the terms of the trust in the prior litigation. After considering the parties' arguments, the trial court found that the *in terrorem* clause should apply, effectively disinheriting defendants. Defendants appeal, and for the reasons that follow, we reverse.

¶ 3                                              BACKGROUND

¶ 4 As noted, the instant appeal represents the second time this dispute has been before this court. The details of the prior litigation are discussed in depth in our prior order. To the extent that they are relevant to the instant appeal, we set forth certain facts and analysis from our prior decision to provide context for the issue currently before us.

2

¶ 5　　　　On June 15, 2018, plaintiff filed a complaint for declaratory judgment, seeking a declaration of the terms of the trust, which was created by John Brierton Sr. (John Sr.) and Jeanne Brierton[1] in 1996; both are deceased, with John Sr. having passed away in March 2016 and Jeanne having passed away in March 2017. Plaintiff named as defendants the couple's six children, who were all named as beneficiaries of the trust: Robin Ann Brierton, Patrick Luke Brierton, Mark Joseph Brierton, Cynthia Brierton DeLong, John Thomas Brierton, and Thomas David Brierton. The trust owned 100% of the membership interest in Picture Ranch, LLC (LLC), a limited liability company that owned a manufactured home community in Colorado. Under the terms of the trust agreement, plaintiff as trustee was directed to distribute the trust's membership interest in the LLC to the six beneficiaries in individually identified percentages. After Jeanne's death, plaintiff sold the manufactured home community that served as the LLC's sole noncash asset, paid off the mortgage encumbering the property, then alleged that it was ready to distribute the membership interests as directed by the trust agreement.

¶ 6　　　　However, defendants John and Thomas[2] took the position that the trust was prohibited from transferring the membership interests because the LLC was in the process of liquidation. Instead, defendants claimed that the membership interests must be distributed pursuant to the residuary clause of the trust, which provided for an equal distribution to all six beneficiaries. Consequently, plaintiff sought a declaration from the court with respect to the proper distribution of the membership interests to the beneficiaries.

---

[1]Since many of the individuals involved with the case share the same last name, we refer to them by their first names for clarity.

[2]As we did in our earlier decision, because John and Thomas were the only beneficiaries to take a position adverse to plaintiff's position, we refer to them as "defendants," while we refer to the beneficiaries collectively as either the "beneficiaries" or the "children."

¶ 7        Defendants filed an answer and a two-count countercomplaint. Count I of defendants' countercomplaint was for declaratory relief and sought a declaration concerning the distribution of the LLC's assets, again based on the position that an LLC that was in the winding-up process could not issue new membership interests. Count II was for breach of contract and alleged that John Sr. and Jeanne, and the trust as their successor, breached the terms of the operating agreement by failing to make provisions to bequeath their membership interests in the LLC to their surviving children *per stirpes*, as required under the operating agreement.

¶ 8        On March 11, 2019, defendants filed a motion for summary judgment on both plaintiff's complaint and on their countercomplaint. Plaintiff filed a response to defendants' motion for summary judgment and a request for declaratory judgment on its complaint. On July 30, 2019, the trial court entered an order on the parties' motions, finding that the terms of the trust agreement controlled and ordering plaintiff to distribute the proceeds from the sale of the LLC's assets pursuant to the schedule of contingent beneficiaries set forth in the trust agreement.

¶ 9        Defendants appealed, and we affirmed the trial court's judgment. *Brierton*, 2020 IL App (1st) 191769-U, ¶ 2. In framing the issue before us, we noted that "[t]he instant appeal arises from a declaratory judgment lawsuit concerning the interplay between two documents: a limited liability company's operating agreement and a trust agreement." *Brierton*, 2020 IL App (1st) 191769-U, ¶ 2. In our analysis, we found that (1) the terms of the trust agreement governed the distribution of membership interests, (2) plaintiff had the authority to issue membership interests to the beneficiaries even while the LLC was in the process of winding up its affairs, and (3) defendants had no breach of contract claim because John Sr. and Jeanne

were no longer members of the LLC at the time of their deaths. *Brierton*, 2020 IL App (1st) 191769-U, ¶ 48.

¶ 10    On August 27, 2020, plaintiff filed a "Petition for Further Declaratory Relief Pursuant to 735 ILCS 5/2-701(c)," seeking further interpretation of the trust documents. Plaintiff alleged that it was prepared to make final distribution of the trust assets to the beneficiaries. However, plaintiff alleged that the trust agreement contained an *in terrorem* clause, which "Certain Beneficiaries" asserted was triggered by defendants' actions in contesting the distribution of the trust's membership interests in the LLC.

¶ 11    The clause at issue provided:

> "It is the specific intention of the Trustors that none of the Trustors' heirs-at-law or any other persons shall receive anything from the Trustors' probate estate or from this trust, except to the extent specifically provided under the Trustors' will or under the terms of this Declaration of Trust. If any person, whether or not named as a contingent beneficiary under this Declaration of Trust or any amendments hereto, shall in any manner oppose, contest, or attack this Declaration of Trust or any amendments hereto, or the distribution of the Trust estate thereunder, then and in that event any such person or persons shall be given the sum of One Dollar ($1.00) each, in lieu of any other share or interest in the trust estate."

¶ 12    In response to plaintiff's petition, defendants denied that they had triggered the *in terrorem* clause and further alleged that, even if they had, the clause was unenforceable as against public policy. The trial court ordered defendants to file a memorandum in support of their answer and permitted any party to file a reply if they wished to do so. In their memorandum, defendants noted that the litigation was not initiated by defendants; plaintiffs filed the original complaint

and named defendants as parties. Defendants further claimed that the issues raised by them had "nothing whatsoever to do with the validity of the Trust or any of its amendments or provisions." Instead, the issues concerned the rights that existed under the LLC's operating agreement and the Trust agreement, with legitimate questions regarding the interplay between them. Defendants also claimed that enforcing the *in terrorem* clause under the circumstances of the instant case would violate public policy and would run counter to the narrow interpretation that such clauses were given under the law.

¶ 13     The remaining beneficiaries filed a reply, arguing that "this litigation is entirely [defendants'] doing" and that defendants sought to rewrite their parents' entire estate plan. The remaining beneficiaries further claimed that defendants' challenges constituted an attack on distributions under the trust, which was specifically prohibited under the *in terrorem* clause. Plaintiff also filed a reply, similarly claiming that defendants repeatedly challenged the distribution of the trust assets pursuant to the schedule of contingent beneficiaries contained in the trust agreement and noting that defendants had accused plaintiff of breaching its fiduciary duties in seeking to distribute the trust assets pursuant to the trust agreement. Plaintiff asserted that it was taking no position as to whether the *in terrorem* clause should be enforced but claimed that "on their face, in their tone, and in their effect on any Trust distributions, the actions and pleadings of [defendants] unquestionably challenged [plaintiff's] distribution of assets as directed by the Trust instruments."

¶ 14     On May 28, 2021, the trial court entered an order on plaintiff's petition for further interpretation of the trust. The court found that the *in terrorem* clause was "definitive and clear in its terms" in prohibiting any attacks on the trust or trust distributions. The court noted that defendants characterized their objection to the trust distribution as having sought the court's

approval of their proposed trust construction but found that "what they have interposed in the underlying dispute was beyond a mere proposal of construction or expression of concern for the trustee's potential breach of fiduciary duty." The court found that defendants, in essence, contested the distribution of the LLC's assets under the terms of the trust and instead sought to receive the proceeds as part of the residuary estate, which "unambiguously constitutes a contest of the distribution of trust assets under the *in terrorem* clause." The court found that this result was consistent with the intent of the settlors and, therefore, the *in terrorem* clause should be applied against defendants.

¶ 15　　　Defendants timely filed a notice of appeal, and this appeal follows.

¶ 16　　　　　　　　　　　　　　　　ANALYSIS

¶ 17　　　On appeal, we are asked to consider one question: does the *in terrorem* clause contained in the trust agreement apply to effectively disinherit defendants based on their conduct in the prior litigation? In construing a trust, we apply the same rules as in the construction of a will. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). "The first purpose in construing a trust is to discover the settlor's intent from the trust as a whole, which the court will effectuate if it is not contrary to public policy." *Donovan*, 145 Ill. 2d at 172. The intention of the settlor is to be ascertained by examining the entire trust and by giving the words employed their plain and ordinary meaning. *Donovan*, 145 Ill. 2d at 172. Where the language of the document is clear, the court should not modify the document or create new terms. *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 27. However, where a term is ambiguous, we may rely upon rules of construction to ascertain the settlor's intent. *Schroeder*, 2018 IL App (1st) 163210, ¶ 27. The construction of a trust presents an issue of law that we review *de novo*. *Schroeder*, 2018 IL App (1st) 163210, ¶ 25; *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 19. *De novo*

consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 18        "Generally, conditions in a clause against contesting the will or attempting to set it aside are valid." *In re Estate of Wojtalewicz*, 93 Ill. App. 3d 1061, 1063 (1981). However, even where they are valid, "conditions against contests are so disfavored by the courts that they are construed very strictly." *Wojtalewicz*, 93 Ill. App. 3d at 1063. Courts are further guided by "the well-established rule that equity does not favor forfeitures, and in construing conditions, both precedent and subsequent, a reasonable construction must be given in favor of the beneficiary." *Clark v. Bentley*, 398 Ill. 535, 540 (1947). In interpreting an *in terrorem* clause such as in the case at bar, our supreme court has cautioned against "a purely lexicographical approach," instead noting that the proper interpretation of such a clause requires consideration of the particular circumstances present at the time of the purported challenge. *Oglesby v. Springfield Marine Bank*, 25 Ill. 2d 280, 288 (1962); *In re Estate of Mank*, 298 Ill. App. 3d 821, 826 (1998). Accordingly, "our analysis does not begin and end with the language of the clause and the conduct at issue. Rather, we must consider whether, under the particular facts and circumstances of this case, application of the clause to the conduct would be contrary to the law or to the public policy of Illinois." *Mank*, 298 Ill. App. 3d at 826.

¶ 19        In the case at bar, the *in terrorem* clause contained in the trust agreement prohibits any person from "in any manner oppos[ing], contest[ing], or attack[ing] this Declaration of Trust or any amendments hereto, or the distribution of the Trust estate thereunder." We must determine whether defendants' conduct in the prior litigation falls within the language of this clause. We note that all of the beneficiaries—defendants on one side, and the remaining

siblings on the other—ascribe particular motivations to each other's conduct, both in the earlier proceedings and in the instant dispute regarding the *in terrorem* clause. However, we are concerned with *what* defendants did previously, not *why* they did it. Consequently, whether defendants were behaving altruistically for the good of the trust or were simply seeking to increase their share of the trust's assets is largely irrelevant to the question of whether their conduct falls within the scope of the *in terrorem* clause. After closely examining that conduct and construing the *in terrorem* clause strictly, we find that it does not.

¶ 20    The parties appear to agree that defendants were not contesting the trust agreement itself; the dispute arises as to whether defendants were "oppos[ing], contest[ing], or attack[ing] *** the distribution of the Trust estate thereunder." Accordingly, it is helpful to examine exactly what positions defendants took with respect to those distributions.

¶ 21    As noted, the trust agreement provided that, upon the death of both John Sr. and Jeanne, any trust assets were to be distributed according to a schedule of contingent beneficiaries.

¶ 22    Paragraph (1)(a) of section V provided that, upon assuming the administration of the trust after the surviving spouse's death, "[t]he Successor Trustee shall forthwith, transfer all right, title and interest in and to the Trust Property unto the contingent beneficiaries, *** as specified by the attached Schedule of Contingent Beneficiaries." Paragraph (1)(d) of the same section provided that, on the death of the surviving spouse, the successor trustee "shall divide the Trust estate, including undistributed income and any subsequent additions, into such proportion as indicated for such contingent beneficiaries as specified, in the Declaration of Trust, *** and as specified by the attached Schedule of Contingent Beneficiaries." The schedule of contingent beneficiaries provided (1) that each of the children was to receive a membership interest in the

LLC in individually identified percentages, ranging from 10% to 40%, and (2) that the residue of the trust estate would pass to the then-living children in equal shares.

¶ 23 According to plaintiff's complaint, plaintiff sold the manufactured home community owned by the LLC and sought to distribute the LLC's membership interests as instructed by the trust agreement. However, defendants took the position that, because the LLC had sold its assets, the trust was prohibited from transferring the membership interests. Therefore, the proceeds from the sale would fall within the trust agreement's residuary clause. This led to the filing of plaintiff's complaint in order to determine the proper distribution of the trust's assets.

¶ 24 Defendants filed a countercomplaint, containing two counts. Count I was for declaratory relief and alleged that, under Colorado law, no new members could be admitted into the LLC since the LLC was in the process of liquidation. Count II was for breach of contract and alleged that, under the terms of the LLC's operating agreement, John Sr. and Jeanne were required to make provisions to bequeath their membership interests in the LLC to their children *per stirpes*, which they failed to do.[3]

¶ 25 Defendants later filed a motion for summary judgment, in which they again contended that Colorado law did not permit the admission of new members while an LLC was in the process of liquidation. Defendants also claimed that the LLC's operating agreement, which contained a provision requiring John Sr. and Jeanne to bequeath their membership interests *per stirpes*, controlled over any inconsistent provisions in the trust agreement.

¶ 26 After the trial court found in plaintiff's favor, defendants appealed to this court. Before this court, they framed the issues as (1) whether the operating agreement or trust agreement

---

[3]As noted, in our prior decision, we found that defendants' breach of contract claim failed, because neither John Sr. nor Jeanne remained members of the LLC at the time of their deaths.

controlled with respect to the disposition of membership interests in the LLC, (2) whether the proceeds from the sale of the manufactured home community could be substituted for the trust's specific bequests of membership interests, and (3) whether defendants could be considered third-party beneficiaries of the operating agreement.

¶ 27    Examining defendants' pleadings and filings closely, we cannot find that defendants "oppos[ed], contest[ed], or attack[ed] *** the distribution of the Trust estate." Defendants' position, as set forth in plaintiff's complaint and in their countercomplaint, was that Colorado law prohibited the issuance of new membership interests in an LLC that was in the process of liquidation. Consequently, the proceeds from the sale of the LLC's assets would necessarily fall within part II of the schedule of contingent beneficiaries—the residuary clause—and not part I. In other words, defendants' position was not contesting the distributions under the schedule of contingent beneficiaries but was challenging which part of the schedule applied. This was not a frivolous position but an issue that required interpretation of Colorado statutes and case law in order to determine the permissible activity of the company. We cannot find that asking whether a proposed action violates the law constitutes an "attack" on the distribution of the trust so as to trigger the *in terrorem* clause.

¶ 28    We recognize that some of defendants' later actions, such as claiming that the operating agreement controlled over the trust agreement, could be construed as such an "attack" on the distribution of the trust. However, these claims appeared for the first time in defendants' motion for summary judgment and in their arguments on appeal—they were not part of any of defendants' pleadings, and there is no indication that they were a basis for defendants' initial disagreement with plaintiff's interpretation of the trust agreement. Given the "very strict[ ]" construction of *in terrorem* clauses (*Wojtalewicz*, 93 Ill. App. 3d at 1063), we decline to hold

defendants' later arguments against them and instead focus solely on the claims raised in their pleadings. Consequently, we cannot find that defendants' conduct triggered the application of the *in terrorem* clause and must reverse the trial court's order finding otherwise.

¶ 29                                  CONCLUSION

¶ 30         For the reasons set forth above, defendants' conduct in the prior litigation did not constitute an attack on the distributions under the trust agreement, as their pleadings raised the issue of whether plaintiff's proposed actions violated Colorado law. Consequently, the trust agreement's *in terrorem* clause does not apply to effectively disinherit them.

¶ 31         Reversed.

**No. 1-21-0741**

| | |
|---|---|
| **Cite as:** | *Chicago Trust Co. v. Brierton*, 2022 IL App (1st) 210741 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-07512; the Hon. Raymond W. Mitchell, Judge, presiding. |
| **Attorneys for Appellant:** | Alan R. Dolinko, of Robinson Curley P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Caren A. Lederer and Katherine M. Oswald, of Golan Christie Taglia LLP, of Chicago, for appellee Chicago Trust Company.<br><br>Christopher M. Heintskill, of Levenfeld Pearlstein, LLC, of Chicago, for other appellees. |